Case firing Ok Next case is number 05-1601 AFG Industries and Asahi Glass against Cardinal I.G. Company. Mr. Trella. Thank you, your honor. May it please the court. This case began more than ten years ago, in May of 1996, and it's been before this court three prior times. Despite that, Cardinal's claims that the 532 patent is invalid still have not been addressed and resolved on the merits. Cardinal's entitled to have those claims decided, either by this court reversing the denial of summary judgment of anticipation, or by vacating the district court's judgment and remanding for that court to consider Cardinal's anticipation and obviousness claims. Now, invalidity was not decided earlier because the district court on three prior occasions granted summary judgment of non-infringement for Cardinal. The last time we were here in front of this court, this court held summary judgment as to infringement was not appropriate and sent the case back. So Cardinal returned to the district court ready, we thought, to litigate infringement and invalidity. Now that didn't happen because the district court, with a new judge presiding, incorrectly concluded that a 2002 ruling by his predecessor, that on its face merely denied Cardinal's motion for summary judgment of invalidity, in fact granted summary judgment in favor of AFG, even though AFG hadn't moved for summary judgment, even though the order said nothing of the kind, and even though the order and the opinion accompanying it would have had to address a host of issues on which it was silent. What about this summary judgment motion on the Goodman anticipation? Did it entail as well an implicit dismissal with prejudice, which would require you to appeal? It did not entail an implicit dismissal with prejudice, Your Honor, and I think that's where Judge Greer went astray. That's obviously the conclusion he had reached. Now I think the best place to start is with the order that addressed the motion for summary judgment of invalidity, and that's at page 2103 of the record. It did several things. It denied Cardinal's motion for summary judgment of invalidity. It granted Cardinal's motion for summary judgment of non-infringement. It denied AFG's motion for partial summary judgment of infringement, and it dismissed AFG's complaint. It also plainly did not do several other things. It did not grant any sort of judgment for AFG on any issue, including validity, and it said nothing at all, including dismissal, concerning Cardinal's counterclaims. Nothing about the order suggests that there was any ruling on Cardinal's invalidity counterclaims. Now Judge Greer inferred this implicit dismissal from the opinion that accompanied the order, and that opinion contains a statement that, actually I've got it right here, the interpreted that as, in effect, granting summary judgment for AFG, but I think first you have to read the statement in context. Judge Hull had before him only Cardinal's motion for summary judgment of anticipation based on Goodman, and you can see that, among other places, at page 2076 of his opinion, close to the beginning, where he describes the motion that he's about to decide, and he says, this is Cardinal's motion. They claim that the patent is valid as a matter of law. On appeal, Judge Greer states that the patent is valid as a matter of law. On disposition, Judge Hull states that the patent is valid as a matter of law. In that regard, this case is a lot like the Syntex Pharmaceuticals case, which we cite in our brief. There, it was a very similar posture. The district court had denied a defendant's motion for summary judgment of invalidity. In the accompanying opinion, the court said the patent is valid as a matter of law. On appeal, there was an argument that this was a judgment that the patent was valid. This court rejected that and said, given the procedural context, this had to be understood as a part of the explanation for the denial of summary judgment of invalidity. On the theory that Goodman does not anticipate, what then is your position? On the theory that Goodman does not anticipate, our position is, first of all, that has not been conclusively resolved. What has been resolved is that Goodman does not anticipate as a matter of law in the sense that we'd be entitled to summary judgment. Our position is that we're entitled to go back and litigate the invalidity issues, including not only anticipation by Goodman, but the various obviousness claims that Judge Hull's opinion and order don't address at all, and which, given that he said he was addressing only Cardinal's motion for anticipation in light of Goodman. So that's our position, Your Honor. Now, to read Judge Hull's order and opinion the way AFG wants this court to read it is to conclude that this was a sua sponte entry of summary judgment by Judge Hull. Now, AFG argues to this court that there's nothing per se improper about sua sponte summary judgment, and that's, of course, true. But in every case AFG cites, and in every case that we've found, the district court at least said that it's sua sponte entering summary judgment in favor of the non-movement. Judge Hull said nothing of the kind here, which indicates that that's not what he was doing. And that's consistent with the law in the Sixth Circuit from which this case comes. Sua sponte summary judgment is greatly discouraged in the Sixth Circuit. The Sixth Circuit requires that the court provide advance notice to the parties that it's considering the sua sponte entry of summary judgment so that the adversely affected party can come forward with all of its evidence. But if it's a matter of law, the judge can decide it. If he gives the notice, yes. But he did not do that here, which we submit indicates that that's not what he intended to do. It's not what he was doing. What you'd have to conclude is not only that he, in effect, secretly granted sua sponte summary judgment, since those words don't appear anywhere either in his opinion or in his order, but that he did so directly contrary to the Sixth Circuit law, governing when district courts in that circuit can grant sua sponte summary judgment. There's no reason to think that Judge Hull did that in this case, Your Honor. When he decides that six layers does not anticipate five layers, that is an oversimplification. That's the end of it, isn't it? When he says that six layers don't anticipate five layers, in the context of what was before him, Your Honor, what he's saying is there's a genuine issue of fact as to whether Goodman, in fact, discloses, when both of its center regions, what Goodman calls layers, when both of them are made of the same material, zinc oxide, then there's a factual question, I believe is what Judge Hull was saying, as to whether that is six layers or five layers as the term layer is used in the 532 patent as construed by this court. So, no, I don't think he resolved that issue, and he certainly did not resolve the other invalidity issues. Judge Newman has said twice, isn't claim construction a matter of law? Oh, claim construction certainly is. Is that what you're saying? If that was the question, I misunderstood. Claim construction is absolutely a matter of law. Well, you're talking about what the meaning of the five and six were in the claims. Well, but what we don't know is there's different meanings for the word. The term layer in Goodman has not been construed. Goodman uses the term layer, but there's no reason to think that it means the same thing, that layer means in the 532 patent as construed by this court. So just comparing the two, you can't say as a matter of law whether Goodman... In order to decide whether it's a layer, you've got to decide whether it's got two things, uniform chemical composition and the same optical properties, don't you? Exactly. In other words, you've got at least two experiments to perform, factual experiments, and those are going to help then, as a matter of fact, decide whether this is a layer. Exactly. Have those been performed? There's evidence in the record on both sides. Now, we think those tests show that Goodman in fact has five layers when the center region is entirely zinc oxide. We believe the optical properties are identical. We have a chart in our brief. I believe it's in page 4. That's what we told you. Judge Rader has recited our prior decision last time it was here. So that's behind us, isn't it, as to what the characteristics of layer is and the obligation to demonstrate one way or another whether the central zinc oxide does or doesn't meet the requirements of a single layer is what's before us. You're asking for a remand of issues on which we previously remanded. I'm asking for a remand on issues as to which you previously remanded, but they haven't been decided. In other words, we don't have anything to review. There hasn't been a decision yet. There has not been a decision on validity. It's been appealed to this court that determines the facts of whether there is uniform chemical composition or uniform properties of optical. Exactly. The only issue as to validity that has been appealed to this court now is the denial of summary judgment, and we have raised that. We believe we were entitled to summary judgment that Goodman anticipates. But you're quite right, Judge Rader. Fundamentally, there are factual issues that have to be decided under this court's claim construction. We think the evidence is so one-sided that we should prevail. But if not, then that issue goes back, as well as the various obviousness issues, which clearly were not decided before. So if Goodman does not anticipate as a matter of law, there are still other validity issues that Judge Hull did not decide which need to be decided. Okay. Now you're into your rebuttal time. You can save it or use it. Well, what I'd like to just touch on very briefly is also with respect to the infringement issue that was addressed at least partially below. Judge Hull granted judgment as a matter of law before the case went to the jury on infringement. We believe there was ample evidence to take to the jury having to do with whether the titanium dioxide in Cardinal's accused products had the characteristics of a layer. That is, primarily, did it affect the optical properties of the final product? That's an issue as to which this court in its earlier decisions had said there were genuine issues of material fact that precluded summary judgment. It should have gone to the jury. There was plenty of evidence, including admissions. If this court refused to allow summary judgment, how can there be a JAMAL? Well, exactly. It's the same question, isn't it? Exactly, Your Honor. It's precisely the same question. It was precisely the same evidence, if not more, presented by Cardinal. The judge took it away from the jury. And it was really quite extraordinary because that's, of course, an issue as to which AFG had the burden of proof being the plaintiff. And so to not even let that go to the jury on this record, we think is reversible error. And I'll reserve the rest of my time. Okay. Thank you, Mr. Treloar. Mr. Kevin. This is an appeal from a final judgment by Judge Greer, which disposed of all the claims in the case. As far as these other defenses, the cardinal claims they have, they did not preserve them in this appeal by presenting any substantive  Now, with respect to what happened with the- What chance have they had to present validity to this court? Your Honor, they- Have they had a chance yet at all? Yes, Your Honor. They have- When? In this appeal. Judge Greer, under final judgment- But we have a question that they didn't have a chance to present their evidence, so there would be nothing in the record that would allow us to make a judgment on validity since the record has not been made. We have to have a decision with a record that we can review. There's been no record made on the issues of validity yet, has there? Well, they chose not to appeal Judge Hull's decision in cardinal three where he found that the Goodman patent did- Did they have to appeal that? Where does it say that he dismissed with prejudice? All he did was deny a summary judgment. We know what a summary judgment is. You assume facts and say on the basis of those assumed facts we are entitled to judgment as a matter of law. Your Honor, there is nothing in his opinion that shows there were any- He said under those assumed facts we're not going to do this now, assuming we'll do it later. Did he say at the same time, but by the way I'm going to preclude you from ever presenting any evidence in the future by dismissing with prejudice? I think when he expressly used the word that he finds that the Goodman patent does not anticipate- Well, but that's implicit. You're certainly familiar with POS-TEC where we say that an invalidity counterclaim could not be implicitly dismissed. It had to be explicit. That's our case law. How do you get around that? Your Honor, if you look at the situation that existed here, in Cardinals 1 and 2, if you look at the order that came down, Judge Hall expressly said the counterclaim was dismissed as moot. In 1 and 2 he said it was moot, exactly. The third one he denies summary judgment of validity on the Goodman anticipation. And in his order he incorporates his opinion, in which he specifically made specific findings, as this Court noted in Cardinal 3. And did he dismiss then the claim with prejudice? Expressly, because that's required under POS-TEC. It was an implicit. We think it was an explicit. It was an implicit. And that's one mistake at least, isn't it? Because POS-TEC forbids that. We believe it was explicit when you look at the totality of the opinion and the order, Your Honor. We believe, looking at this, that to reverse Judge Greer would be grossly unfair because the arguments that are being presented to this Court on the issue of mootness were the opposite, or are the opposite of what was presented to Judge Greer. He was told by Cardinal in strongest language in the briefs and in oral argument that the case was not dismissed as moot with or without prejudice. So it's simply not error for Judge Greer to do what they told him to do, and that is to not find it dismissed as moot without prejudice. Now, with respect to Jane Wall, which you have raised, the fact is I think it's very important to note that in the record below not a single Cardinal witness came on and said Cardinal did not infringe. You will not find that testimony from a Cardinal witness. Cardinal's experts did not come in and even attempt to contradict any of the evidence that the plaintiffs in this case put on for infringement. First off, there was nothing which contradicted the testing that was offered by the plaintiffs that the central zinc oxide layer in the Cardinal product was a single layer. With respect to the Jacobson reference that they talk about, the only testimony on that was that it was a different product, a different set of circumstances, and again there was nothing to connect Jacobson, which was a different product, to the Cardinal product. Now, we said in our earlier opinion this Court perceives genuine issues of material fact that preclude summary judgment on that issue. Isn't the Jane Wall doing exactly the same thing, just deciding exactly the same thing as an issue of law? Your Honor, there's a significant difference. And we said there are factual issues. We couldn't do it the first time it was up here. We presented the evidence which raised the factual dispute. We went forward at trial, we presented our evidence, and Cardinal did not present any evidence that contradicted it. If you want to think about a scale, on the Cardinal side there was no evidence. All of the evidence, all of it, was on the plaintiff's side in this particular case. Cardinal's own testing showed that this titanium region... But see, the problem with your argument is they relied on your expert. They said your expert had given them all they needed as a factual matter. Your expert was testifying that 35 angstoms of titanium would produce a 2% change in optical properties. I don't believe he said 35 angstoms, 2%. I think that comes out of Jacobson, which was 30 angstoms, Your Honor. I may have missed the facts. They relied on your expert, didn't they? Absolutely. And they relied on your facts, and even then said, with those facts in dispute, how could the court make a decision? Because the question was, does the titanium in Cardinal's product, however thick it is, cause a change in the optical properties? The evidence Cardinal's testing made by their expert was that it did not. That whether you had 14 angstoms of titanium metal or you had 20 angstoms of titanium metal, the product had identical transmission. I think their expert's use of his expert was... Was evidence excluded by the district court? Cardinal argues the district court improperly excluded evidence that they wanted to put forward about the optical transmission to titanium level. That's incorrect, Your Honor. In fact, what happened exactly was Magistrate Ingram, following the directors of this court in Cardinal II, found the testing to be irrelevant because it only went to protecting the silver. They appealed from judging Magistrate Ingram's order to Judge Greer at trial, and Judge Greer did not affirm Judge Ingram. He said, I want to hear more testimony on this point. And what happened was when that was argued, Cardinal withdrew their appeal of Magistrate Ingram's order and asked only to get in the testing on 10 angstoms of titanium because they wanted to rebut our expert's testimony that 11 angstoms was sufficient to protect the silver. Isn't it irrelevant whether discoloration affects this at all? The relevant question is whether the thickness affects the optical properties. And that evidence was specifically excluded by the... No, Your Honor, it was not. They withdrew their appeal. Or they relied on your evidence. So there's at least two reasons. Either there was a problem of excluding the only relevant evidence that's going to decide the factual matter, or they have a factual dispute based on your expert's testimony. There are still facts in dispute. How can this be decided on Jamal? The fact is that these test works were not excluded by Judge Greer. They were withdrawn by Cardinals. You look at pages of the appendix, particularly page 851, 359, where they said it was a deal where we offered to stipulate under the effect of 10 angstoms of titanium, Your Honor. It was no appeal, Judge, in Magistrate Ingram's order, that the testing was out because all it showed was irrelevant matter. The fact is that the testing that was put in showed that the thickness of titanium, or titanium oxide, whatever you want to say, had absolutely no effect on the optical properties. That was put in there. It was done by Cardinals' expert. It was unchallenged and unrebutted by Cardinals throughout the case. That was the undisputed evidence that Judge Greer had in front of him when it came time for Jamal. We talk about Professor Baker. Professor Baker never testified as to what happened to the titanium in the Cardinal product, contrary to what they have in their reply brief. What Judge Baker testified to was what would happen to a theoretical titanium layer if it was fully oxidized. He never connected the dots from that theoretical oxidation to the Cardinal product. Can we go back to the main problem here for just a second? We've talked about this summary judgment on the Goodman anticipation. Where was their opportunity to present validity questions of 112 nature, or obvious, 103? The only thing that was resolved, even under your theory, that somehow this finding statement was an explicit dismissal with prejudice, even under that theory, where was the dismissal of the 112 issues and the obviousness issues? Let's take 112 first. They never pled 112 before Judge Hull. Before Judge Hull, the evidence unequivocal from their expert was that it was enabled. That was a change. Judge Hull wasn't asked to decide that. The only pleadings of prior art or infallibility were done in summary judgment motions filed in 1997. 112 wasn't there. The others went. When you accepted jurisdiction in Cardinal III, you were accepting jurisdiction based on, according to Judge Greer, a dismissal with prejudice. They had the opportunity at that time to complain about the errors if there were any by Judge Hull. They chose not to. Has there ever been an opportunity for them to present an obviousness case? They certainly presented before Judge Hull. They did? There were several motions filed in 1997. And were those ever resolved? The only thing we see resolved here is anticipation. Is there an analysis of the suggestion to combine of the various pieces of prior art? There is on page 6 of the Cardinal III decision by Judge Hull, and you will see obviousness mixed in with anticipation at the end. Well, he seems to get the terms a little bit confused, as we recognize. But where is the reference to Errico and Southwall and those? I don't have the appendix site, but it's on page 6 of his Cardinal III. And he did, in your feeling, an obvious analysis, and therefore dismissed that as well with prejudice explicitly. Well, all he had to do was explicitly dismiss the counterclaim, which is what he did. Whether he considered all of their defenses is not really before us. If he dismissed the counterclaim with prejudice, then they had to appeal. And their appeal could have been that he erred on anticipation with Goodman, he erred on obviousness with Goodman, he erred on obviousness with everything else they presented. They chose not to. If you look at every single one of the errors that they're assigning to Judge Greer, it was a trial tactic that they took. Cardinal didn't take an appeal from Cardinal III for the reason that they honestly set forth before Judge Greer, they didn't want to have to take what they perceived to be inconsistent positions before this Court. The fact is that if you look at the evidence that they claimed was excluded, the testing, what Judge Greer did is he offered them the opportunity to show them relevancy. And this is the testing on the Goodman product that somehow was going to show non-infringement of the Cardinal product. How is that relevant? That's what Judge Greer asked them. Show me and I'll reconsider. They didn't show him. It's simply not an error for Judge Greer to exclude something that is irrelevant, especially when he offered them the opportunity to show relevancy. If we look at everything that happened here, it was a trial tactic that they took. They didn't connect the dots with Baker. They didn't connect the dots with Jacobson. They left the Court having to guess how any of this tied into the Cardinal product. They made 900 million square feet of that product, enough to cover the District of Columbia. They never offered a single test that that central zinc oxide was more than one layer. They never offered a single test which they asserted showed that in their product the titanium layer made a difference optically, that there was any change in the optical properties, no matter how they changed the thickness, except to the extent that it prevented oxidation of the silver, which this Court has already decided was irrelevant. Judge Greer had the expert Cardinal come on and testify. What does this test show me? Eventually, he said, it shows that it protected the silver. He would not say that there was any optical significance. I see my time is up. Thank you. Thank you, Mr. Kelly. Mr. Trevor. Thank you, Your Honor. Just to pick up on that last point, Cardinal, in fact, tried to offer evidence of the optical significance. That was the Lefebvre testimony that was excluded. As for this notion that Cardinal withdrew its appeal or didn't challenge that, made some sort of a deal, we address that at pages 25 to 26 of our reply brief. There was no deal. Cardinal objected to the exclusion of that evidence, and that was the error. Now, as far as Cardinal's opportunity, Judge Rader, you asked about to address obviousness and the other invalidity arguments. Cardinal had no opportunity. It's true that in 1997, Cardinal filed motions for summary judgment that raised, among other things, some of the obviousness arguments. Judge Hull had dismissed those motions, as moot, in connection with the prior appeals, the prior orders. Then, when the case went back, Cardinal did not reassert those motions of summary judgment. It wasn't abandoning its defenses. It just wasn't seeking summary judgment on those defenses. The only motion for summary judgment it filed, the only one that Judge Hull decided, was anticipation based on Goodman. So Cardinal did not have any opportunity to present those issues. To the extent Judge Greer now finally has rejected Cardinal's invalidity defenses, it's based on an erroneous law of the case ruling, which is what we are presenting to this court. So there's been no waiver of any of Cardinal's invalidity defenses. Now, Mr. Kelly said that Cardinal did not mention mootness in the district court, and in fact took the opposite position. That's just not true. Cardinal argued that the counterclaims in Cardinal 1 and 2 had been treated as moot, and argued that the October 2002 Cardinal 3 ruling was in the same posture. I refer the court to Appendix Pages 5-0, 3-6-6, and 6-7. Moreover, even if mootness hadn't been raised, there was no doubt that it was Cardinal's position that Judge Hull had not entered an appealable order on validity. That was the focus of multiple briefs and lengthy oral arguments below. Whether or not mootness as a particular basis for a non-merits disposition had been raised, and it was, doesn't change the fact that Cardinal's position concerning what Judge Hull had done and did not do has been clear and consistent throughout. Now, the other point that I'd like to make is that Mr. Kelly harped on the fact that Cardinal's witnesses didn't deny infringement and didn't present any affirmative evidence, but of course it wasn't Cardinal's burden. We were, in fact, relying very heavily on AFG's witnesses. Their expert, as this court had noted, I think, in both Cardinal 2 and Cardinal 3, had said that 35 angstroms of titanium is optically significant, and so we were building on that to show, well, we have 35 angstroms of titanium. Certainly a jury, based on the admissions of their expert, should have been allowed to decide that that meant that our titanium dioxide was, in fact, a layer. Now, Mr. Kelly also said that somehow Judge Hull's October 2002 opinion incorporated... I'm sorry, order incorporated his opinion. Well, that just doesn't happen. First of all, he doesn't say that he's doing that. He says, for the reasons that I set out in my opinion, here's what I'm doing. I'm denying Cardinal's motion for summary judgment. And again, as this court indicated in syntax, you do not find a dismissal based on that kind of language in an opinion. If the court has no further questions... Thank you, Mr. Trella, and thank you, Mr. Kelly. The case is taken into submission.